**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. No. 1:15-cv-00689 (RDM) |
| U.S. DEPARTMENT OF STATE, | ) | |
| Defendant. | ) | |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................2

ARGUMENT..............................................................................................................................3

I. STATE CONDUCTED A REASONABLE AND ADEQUATE SEARCH FOR RESPONSIVE DOCUMENTS……………………………………………………………………4

II. STATE PROPERLY WITHHELD MATERIALS PURSUANT TO EXEMPTIONS 6, 7(C), AND 7(E)……………………………………..………………………...……7

A. State Properly Withheld Information Under Exemptions 6 and 7(C).............8

B. State Properly Withheld Information Under Exemption 7(E)........................11

III. STATE PRODUCED ALL REASONABLY SEGREGABLE INFORMATION………….........13

CONCLUSION.........................................................................................................................14

## INTRODUCTION

In this action filed under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), Plaintiff Judicial Watch, Inc. seeks records from Defendant United States Department of State ("State") regarding former Secretary of State Hillary Clinton's use of a non "state.gov" email address; any expenses incurred in the creation, maintenance and/or use of the "clintonemail.com" server; and any communications between State Department employees and the White House or Executive Office regarding Secretary Clinton's use of a non "state.gov" email address. In response to Plaintiff's requests, State conducted a search that was reasonably calculated to locate all records in its possession responsive to Plaintiff's requests. All reasonably segregable non-exempt material has now been disclosed to Plaintiff.

The issues before this Court are: (1) the adequacy of the search conducted by the State Department pursuant to Plaintiff's FOIA requests; and (2) the withholding, in full, of a 16-page Report of Investigation ("ROI") prepared by the Department's Bureau of Diplomatic Security ("DS") for a Single Scope Background Investigation ("SSBI") of former State Department employee Bryan Pagliano pursuant to FOIA Exemptions 6, 7(C), and 7(E).[1] Summary judgment in favor of State is appropriate because the search it conducted in response to Plaintiff's FOIA requests was adequate, and because disclosure of the ROI would constitute a clearly unwarranted invasion of personal privacy and reveal law enforcement techniques which would risk circumvention of the law.

---

[1] As noted in the Declaration of Eric F. Stein, State's searches retrieved four documents that were responsive to Plaintiff's FOIA requests. In three of those documents, information was withheld in part pursuant to FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (b)(6). The fourth document, the one at issue here, was withheld in full pursuant to FOIA Exemptions 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(E). As Plaintiff has indicated, in writing, that they will not be challenging the exemptions applied to the three documents withheld in part, this brief, as well as the accompanying declaration, concerns only the adequacy of State's search and the exemptions applied to the fourth document withheld in full.

## BACKGROUND

Between March 6, 2015 and March 9, 2015, Plaintiff submitted three FOIA requests to State. Compl. ¶¶ 5, 8, 11 (ECF No. 1); Stein Decl. Ex.'s 1-3. The requests sought the production of:

> 1) "Any and all records concerning, regarding, or relating to the use of a non-"state.gov" email address by former Secretary of State Hillary Rodham Clinton. Such records include, but are not limited to, records concerning security, classification, preservation, and compliance with the Federal Records Act and/or the Freedom of Information Act." From January 20, 2009 to February 20, 2009. Compl. ¶ 5; Stein Decl. Ex. 1.
>
> 2) "Any and all communications between officials, officers, or employees of the Department of State and officials, officers, or employees of the White House and/or Executive Office of the President concerning, regarding, or relating to the use of non-"state.gov" email addresses by former Secretary of State Hillary Clinton." From June 1, 2014 to the present. Compl. ¶ 8; Stein Decl. Ex 2.
>
> 3) "Any and all records in the possession or under the control of the State Department related to expenses incurred in the creation, maintenance and/or use of the clintonemail.com email server domain, including but not limited to, expenses for hardware, software, registration fees, account maintenance fees, and security products and services." Compl. ¶ 11; Stein Decl. Ex 3.

Plaintiff initiated this lawsuit on May 6, 2015. ECF No. 1 ("Complaint"). On June 10, 2015, State filed its Answer. ECF No. 6. In a Joint Status Report filed on September 18, 2015, State informed the Court that it would complete its search for potentially responsive records by October 30, 2015 and provide Plaintiff with the estimated volume of documents retrieved from its search efforts needing review and processing by November 6, 2015. ECF No. 11. On October 30, 2015, State completed its search for records potentially responsive to Plaintiff's requests. *Id.* This search retrieved approximately 16,900 pages of documents where one of State's search terms was present somewhere on the document. *Id.*

On November 23, 2015, the parties filed a Joint Status Report in which they proposed that State would complete its review of these documents and produce any non-exempt material responsive to Plaintiff's FOIA requests on our before January 20, 2016. *Id.* The Court entered a

scheduling order consistent with the parties' proposal on November 30, 2016. Court's Minute Order of Nov. 30, 2015.

After manually reviewing each of the approximately 16,900 pages of documents that contained at least one of the terms State used to conduct its search, State retrieved four documents that were responsive to at least one of Plaintiff's FOIA requests. ECF No. 11; *See* Stein Decl. ¶¶ 38; 58; 60. Three of the documents, consisting of six total pages, were redacted in part and provided to Plaintiff's on or before January 20, 2016. Stein Decl. Ex.'s 4-5. The fourth document, consisting of sixteen total pages, was withheld in full. Stein Decl. Ex 13.

On January 21, 2016, the Court granted an unopposed stay of the production deadline set on November 30, 2015. Court's Minute Order of Jan. 21, 2016. This stay applied only to the search of the newly discovered electronic files described in State's motion. ECF No. 12. On March 4, 2016, State notified Plaintiff that it had completed the search of the recently located additional electronic files referenced in the parties' status report of February 5, 2016 and found no documents responsive to Plaintiff's FOIA requests. Stein Decl. Ex 6; ECF No. 14. This completed State's search for, and production of, documents responsive to Plaintiff's FOIA requests. *Id.*

After production was complete, State agreed to produce a draft *Vaughn* index to Plaintiff in an attempt to narrow the issues for briefing and judicial review. ECF No. 14. Thereafter, the parties met and conferred and Plaintiff agreed that they would not challenge the redactions applied to the three documents redacted in part. ECF No. 15. On April 18, 2016, the parties proposed the current schedule to brief the Court on the issues remaining in the litigation, which was accepted by the Court on April 19, 2016. *Id.*; Court's Minute Order of Apr. 19, 2016.

## ARGUMENT

FOIA cases are typically and appropriately decided on motions for summary judgment. *See, e.g., Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009); *Brayton v. Office of the U.S. Trade Representative*,

641 F.3d 521, 527 (D.C. Cir. 2011). "The Court may grant summary judgment on the basis of agency affidavits and declarations alone when they are 'relatively detailed and non-conclusory.'" *Freedom Watch, Inc., v. NSA*, 49 F. Supp. 3d 1, 5-6 (D.D.C. 2014) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Such declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard,* 926 F.2d at 1200 (citation omitted).

The Declaration of Eric F. Stein, on behalf of State, is submitted in good faith, describes the search conducted by State as to each of Plaintiff's FOIA requests and the withheld material with reasonable specificity, and demonstrates that the withheld material falls within Exemptions 6, 7(C) and 7(E) and is not reasonably segregable from non-exempt material. As such, the Court should grant State's motion and enter summary judgment in its favor.

## I. STATE CONDUCTED A REASONABLE AND ADEQUATE SEARCH FOR RESPONSIVE DOCUMENTS

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit or declaration describing the scope of that search. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). An agency's declaration need not "set forth with meticulous documentation the details of an epic search for the requested records[.]" *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). Rather, a declaration is sufficiently detailed if it describes "what records were searched, by whom, and through what processes," including the search terms used. *Freedom Watch, Inc.*, 49 F. Supp. 3d at 5-6 (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551–52 (D.C. Cir. 1994)); *see also Perry*, 684 F.2d at 127 ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the

agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."). A presumption of good faith attaches to an agency's search declaration. *Freedom Watch, Inc.*, 49 F. Supp. 3d at 6. "Unless the record leaves 'substantial doubt as to the sufficiency of the search,' summary judgment for the agency is proper." *Coleman v. DEA*, 134 F. Supp. 3d 294, 304 (D.D.C. 2015) (quoting *Dorsey v. Exec. Office for U.S. Attorneys*, 926 F. Supp. 2d 253, 256 (D.D.C. 2013)).

State's declaration more than meets this standard. Based on its knowledge of the subjects at issue in Plaintiff's requests, State directed its search efforts to the offices and records systems it determined were reasonably likely to contain responsive records. Stein Decl. ¶ 20. Specifically, State searched its Bureau of Administration, Bureau of Diplomatic Security, Bureau of Information Resource Management, Office of the Legal Adviser, Office of the Executive Secretariat, Office of the Under Secretary for Management, and the Retired Records Inventory Management System, as well as materials provided to State from certain former officials, including from the non-state.gov accounts of former Secretary of State Hillary Clinton and former State employees Huma Abedin, Cheryl Mills and Jake Sullivan. *Id.* ¶¶ 20; 23; 59. All files likely to contain responsive materials were searched. *Id.* ¶ 20.

State's declaration describes, in detail, the specific steps that were taken to search the relevant electronic and paper files, in each of these individual offices, for each of Plaintiff's FOIA requests. *See* Stein Decl. ¶¶ 18-61. For each office where potentially responsive materials would be located, the declaration describes: the function of the office; how the files that could contain documents responsive to Plaintiff's FOIA requests were identified; how those files are organized; how the search for materials was conducted within those offices; the search terms used, including the connector terms; and how State identified documents responsive to Plaintiff's FOIA requests when a search term was present somewhere on the document. *See id.*

One example of the comprehensive search, conducted by State, as to each of Plaintiff's FOIA requests, is the search of the Office of the Executive Secretariat Staff ("S/ES-S"). First, the declaration describes the functions of S/ES-S and the various subordinate offices within S/ES-S. Stein Decl. ¶ 22 (describing S/ES-S as the component "responsible for coordination of the work of the State Department internally, serving as the liaison between State's bureaus and the offices of the Secretary, the Deputy Secretaries, and the Under Secretaries."). Next, the declaration describes how files that may contain materials responsive to Plaintiff's requests were identified. *Id.* ¶ 23 ("A Management Analyst, who was knowledgeable of both the request and S/ES-S records systems, conducted a search of S/ES-S electronic records systems reasonably likely to contain responsive records.")

Then, the declaration describes the specific systems that were used to conduct the search of S/ES-S files and how they operate. *Id.* ¶ 23 (describing the Secretariat Tracking and Retrieval System ("STARS") and Everest search systems and their capabilities). The declaration then lists the search terms and connectors that were applied to each of Plaintiff's three FOIA requests. *See, e.g., id.* ¶ 24 (describing how a S/ES-S Management Analyst conducted a search for records responsive to FOIA request F-2015-05052, Plaintiff's first request, using the following search terms and connectors: "'Clintonemail.com' or 'Expenses' or 'Hardware' or 'Software' or 'Registration Fee' or 'Account maintenance fees' or 'Security' or 'services' or 'Classification' or 'Preservation' or 'Compliance' or 'FOIA' or 'Freedom of Information Act' or 'Hillary Clinton' for the period January 20, 2009 to February 20, 2009."). Finally, the declaration describes how State reviewed the documents, retrieved by this electronic search, to determine if they were responsive to one of Plaintiff's three FOIA requests. *See, e.g., id.* ("The S/ES-S Management Analyst manually reviewed any document identified by this electronic search because at least one search term was present somewhere on the document. Based on that review, State located no responsive records.").

In short, State searched seven distinct locations and records systems, together with materials provided from certain non-state.gov email accounts, for records responsive to Plaintiff's requests, utilizing search terms reasonably calculated to uncover all relevant documents. State then conducted a manual review of the records retrieved and determined that four documents, totaling twenty-two pages, contained material responsive to at least one of Plaintiff's FOIA requests. The agency thus performed an adequate search for records responsive to each of Plaintiff's FOIA requests.

Moreover, State's declaration more than adequately explains the search. Thus, the agency has met its burden to demonstrate that its search was reasonable and adequate and summary judgment should be entered in its favor. *See, e.g., Estate of Abduljaami v. U.S. Dep't of State*, No. 14-CV-7902, 2016 U.S. Dist. LEXIS 1835, *7-8, 2016 WL 94140, at *9 (S.D.N.Y. Jan. 7, 2016) (finding a State search declaration sufficient when it described the agency's FOIA process, the steps taken to respond to plaintiff's request, the offices where files responsive to plaintiff's request were most likely to be found, the search performed, and the search terms used); *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137 (D.D.C. 2015) (same); *Rollins v. U.S. Dep't of State*, 70 F. Supp. 3d 546 (D.D.C. 2014) (same); *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 176 (D.D.C. 2011) (same).

## II. STATE PROPERLY WITHHELD MATERIALS PURSUANT TO EXEMPTIONS 6, 7(C), AND 7(E)

An agency that withholds material pursuant to a FOIA exemption bears the burden of showing the applicability of the claimed exemption. *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). The agency "may satisfy its burden of establishing its right to withhold information from the public by submitting appropriate declarations and, where necessary, an index of the information withheld." *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 72 (D.D.C. 2012) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973)). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption," and "is not

contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU*, 628 F.3d at 619. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (citation omitted).

Here, the document at issue was withheld in full pursuant to FOIA Exemptions 6, 7(C) and 7(E). As explained below, and as amply demonstrated in the Stein Declaration, State's withholdings clearly satisfy the requirements of FOIA.

**A. State Properly Withheld Information Under Exemptions 6 and 7(C)**

Exemptions 6 and 7(C) protect the privacy of individuals from unwarranted invasion. The applicability of both exemptions requires the agency to balance relevant individual privacy rights against the public interest in disclosure. Exemption 6 allows the withholding of information about individuals in "personnel and medical files and similar files" when the disclosure of such information would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 requires the agency to balance the individual's right to privacy against the public's interest in disclosure. *See U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976); *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). When weighing the public interest involved in disclosure the court considers: (1) whether disclosure would serve the "core purpose" for which Congress enacted the FOIA. i.e., to show "what the government is up to," and (2) the public interest in general, not particular interests of the person or group seeking the information. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 750 (1989).

Exemption 7(C) is the law enforcement counterpart to Exemption 6 and protects the privacy interests of all persons mentioned in law enforcement records. Though Exemptions 6 and 7(C) both require agencies and reviewing courts to undertake the same weighing of interests, the balance under Exemption 7(C) "tilts more strongly toward nondisclosure" because its "privacy

language is broader than the comparable language in Exemption 6[.]" *Bartko v. Dep't of Justice*, 79 F. Supp. 3d 167, 172 (D.D.C. 2015) (quoting *Reporters*, 489 U.S. at 756); *Braga v. FBI*, 910 F. Supp. 2d 258, 267 (D.D.C. 2012). The Supreme Court has explained that these phrasing differences reflect Congress's choice to provide "greater protection" to law enforcement materials than to "personnel, medical, and other files." *Bartko*, 79 F. Supp. 3d at 172 (citing *Reporters*, 489 U.S. at 756). Thus, the D.C. Circuit consistently has held that Exemption 7(C) "establishes a lower bar for withholding material [than Exemption 6]." *ACLU v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011); *see also Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).

Here, Exemption 7(C) has been applied together with Exemption 6, to protect personally identifiable information, because the record at issue was compiled for a law enforcement purpose: the Single Scope Background Investigation of former State Department employee Bryan Pagliano. And since the entire record at issue was compiled for law enforcement purposes, the Court need only apply the 7(C) balancing test, which tilts further in favor of non-disclosure. *Beck,* 997 F.2d at 1491 (citation omitted); *see Roth v. U.S. Dep't of Justice,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)").

However, before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (citations omitted). The record in question meets that threshold requirement, because it was created by State's Bureau of Diplomatic Security ("DS") as part of a security clearance background investigation. Stein

Decl. ¶¶ 63; 68-69. As explained more fully in the declaration, DS is the "law enforcement arm of State and is responsible for providing a safe and secure environment for the conduct of U.S. foreign policy." *Id.* ¶ 68. The record itself is a Report of Investigation ("ROI") which the declaration explains is "an investigative document utilized by law enforcement and personnel adjudication entities within DS for the purpose of investigating the private background of an individual for security clearance related purposes and/or adjudication of suitability for a sensitive position within the U.S. Government…." *Id.* ¶ 69. Thus, as the document was prepared by the law enforcement arm of State, for law enforcement purposes, it meets the threshold requirement of Exemption 7. *See, e.g., Erwin v. U.S. Dep't of State*, No. 11 C 6513, 2013 WL 6452758, 2013 U.S. Dist. LEXIS 172597 (N.D. Ill. Dec. 9, 2013) (finding a security clearance investigation conducted by DS meets the threshold requirements of Exemption 7); *See also Morley v. CIA*, 508 F.3d 1108, 1128-1129 (D.C. Cir. 2007) ("Background investigations conducted to assess an applicant's qualification, such as the CIA's clearance and investigatory processes, inherently relate to law enforcement.").

Next, the agency must balance the privacy interest at stake against the public interest in disclosure. Here, State determined that release of the ROI would constitute a clearly unwarranted invasion of Mr. Pagliano's privacy, and the privacy of the third parties mentioned in the document, and the public interest in its disclosure was minimal at best. Stein Decl. ¶ 79.

The Supreme Court has advised that "as a categorical matter . . . a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy[,]" *Reporters*, 489 U.S. at 780, thus from the start the balance strongly tilts towards nondisclosure of the ROI. The report itself involves "an intensely personal set of inquiries into a person's life, to include the most sensitive of inquiries into psychological conditions, alcohol consumption, sexual behavior, and other matters." Stein Decl. ¶ 76. Not only does the report contain information about the subject, it contains information about the subject's relatives and

acquaintances, as well as the names and identifying information of DS agents and support employees. *Id.* ¶¶ 77-78. All of whom have a substantial interest in not having their names and other identifying information disclosed to the public.

State then balanced these strong privacy interests against the minimal light the release of such information would shed on the conduct of governmental business. Here, although Mr. Pagliano himself might be of some public interest using the vernacular meaning of the phrase, his personal information and the personal information of third parties mentioned in the report, sheds minimal, if any light, on the operations and activities of the agency, and so the legal definition of public interest is not met. *Id.* ¶ 79.

Therefore, in each instance, State determined that the privacy interest clearly outweighed any public interest in disclosure. *Id.* As such, Exemptions 6 and 7(C) were properly applied. *See, e.g., Wolk v. United States*, No. Ci.A. 04-CV-832, 2005 U.S. Dist. LEXIS 8163, 2005 WL 465382 (E.D. Pa. Feb. 28, 2005) (upholding the FBI's complete withholding of the background investigation of a federal judge under Exemption 7(C) because disclosure would constitute an unwarranted invasion of personal privacy and provide no insight into the agency's performance of its investigatory duties).

Moreover, the declaration explains the application of Exemptions 6 and 7(C) and the balancing test in a thorough and logical manner. Thus, the agency has met its burden to establish its right to withhold the report and summary judgment should be entered in its favor.

**B. State Properly Withheld Information Under Exemption 7(E)**

Exemption 7(E) protects "records or information compiled for law enforcement purposes . . . [that] would disclose techniques and procedures for law enforcement investigations or prosecution, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than

requiring a highly specific burden of showing how the law will be circumvented, exemption (7)(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell*, 646 F.3d at 42 (alteration in original) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)). The agency need not demonstrate an actual or certain risk of circumvention, but rather a reasonably expected risk. *Mayer Brown,* 562 F.3d at 1193. Courts have routinely found that information revealing security clearance procedures could render those procedures vulnerable and weaken their effectiveness at uncovering background information on potential candidates, and thus fall under the protection of Exemption 7(E). *Morley*, 508 F.3d at 1129; *Henderson v. Office of the Dir. Nat'l Intelligence*, No. 15-103, 2016 U.S. Dist. LEXIS 22800, 2016 WL 755608 (D.D.C. Feb. 25, 2016); *see also Mittleman v. Office of Pers. Mgmt.,* 76 F.3d 1240, 1243 (D.C. Cir. 1996) (per curiam) (upholding OPM's application of Exemption 7(D) to the source of information in a security clearance investigation).

As explained in State's declaration, the ROI in question "contains information demonstrating specific techniques and procedures used by DS personnel while conducting background investigations, including methods for verifying information sought and cooperation with other law enforcement bodies." Stein Decl. ¶ 80. As such, State determined that disclosure of the information could risk undermining the effectiveness of these procedures, as well as the investigative techniques prescribed by the Office of the Director of National Intelligence and the Office of Personnel Management, and could result in future applicants utilizing the information to evade security checks. *Id.* Therefore, because release of the ROI could risk circumvention of national security background investigations it was properly withheld under Exemption 7(E). *See Morley*, 508 F.3d at 1129 (concluding that the CIA properly withheld information revealing security clearance procedures because its release "could render those procedures vulnerable and weaken their effectiveness at uncovering background information on potential candidates"); *Henderson v. Office of*

*the Dir. Nat'l Intelligence*, No. 15-103, 2016 U.S. Dist. LEXIS 22800, 2016 WL 755608 (D.D.C. Feb. 25, 2016) (finding that ODNI properly withheld the Federal Investigative Standards ("FIS")— the standards for all security and suitability background investigations for the executive branch—under Exemption 7(E)). As with Exemptions 6 and 7(C), State's declaration explains the application of Exemption 7(E) in a thorough and logical manner. Thus, State has established its right to withhold the ROI pursuant to this exemption.

### III. State Produced All Reasonably Segregable Information

State has released all reasonably segregable, non-exempt information. Stein Decl. ¶ 81. FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information, 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions." *Mead Data Ctr. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *Kurdyukov v. U.S. Coast Guard*, 578 F. Supp. 2d 114, 128 (D.D.C. 2008). However, this provision does not require disclosure of records in which the non-exempt information that remains is meaningless. *See Nat'l Sec. Archive Fund v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information existed because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words").

Consistent with this obligation, State has reviewed each of the documents redacted or withheld on a line-by-line basis and has concluded that there is no additional non-exempt information that may reasonably be segregated and released. *See* Stein Decl. ¶¶ 79-81. Specifically, State explained that "[b]ecause the nature of an ROI for an SSBI is to inquire into the most intimate aspects of an individual's life to determine whether the government can trust them to handle its most sensitive information, the entire ROI involves privacy sensitive material." *Id.* ¶ 81. Moreover, since the entire document in questions is an SSBI, State determined that "the entire ROI reflects

investigative techniques; release of any portion of the document could reveal investigative decisions…." *Id.* As such, no reasonably segregable information could be produced from this document in response to Plaintiff's FOIA requests and it was withheld in full.

## CONCLUSION

State conducted an adequate search for documents responsive to Plaintiff's requests, and properly withheld information exempt from disclosure under Exemptions 6, 7(C) and 7(E); furthermore, all reasonably segregable information has been released to Plaintiff. For these reasons, State respectfully requests that summary judgment be entered in its favor.

Dated: June 17, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ *Andrew E. Carmichael*
Andrew E. Carmichael
Trial Attorney
VA Bar No. 76578
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Rm.7218
Washington, D.C. 20530
Tel: (202) 514-3346
Fax: (202) 305 2685
Email: andrew.e.carmichael@usdoj.gov

*Attorneys for Defendant*