**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., *Plaintiff*, v. U.S. DEPARTMENT OF STATE, *Defendant*. | ) | Civ. No. 1:15-cv-00689 (RDM) |

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, hereby cross-moves for summary judgment against Defendant U.S. Department of State. As grounds therefor, Plaintiff respectfully refers the Court to the accompanying "Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment," and "Plaintiff's Response to Defendants' Statement of Material Facts Not in Dispute and Statement of Material Facts in Support of Cross-Motion for Summary Judgment."

Dated: January 27, 2017

Respectfully submitted,

*/s/ Lauren M. Burke*
Lauren M. Burke
DC Bar No. 1028811
**JUDICIAL WATCH, INC.**
425 Third Street S.W., Suite 800
Washington, DC 20024
(202) 646-5172

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., *Plaintiff*, v. U.S. DEPARTMENT OF STATE, *Defendant*. | Civ. No. 1:15-cv-00689 (RDM) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch ("Plaintiff" or "Judicial Watch"), by counsel, respectfully submits this memorandum in opposition to Defendant Department of State's ("Defendant" or "State Department") motion for summary judgment and in support of Plaintiff's cross-motion for summary judgment.

**Introduction**

Defendant has failed to provide all records in its possession, or at least the reasonably segregable, non-exempt portions of such records, and has, therefore, unreasonably withheld material responsive to Plaintiff's FOIA requests. As such, Defendant's search for and production of records responsive to Plaintiff's FOIA requests is inadequate at law and requires further efforts to produce records. This Court should so find and order production of the withheld material.

## I. BACKGROUND

Plaintiff filed this FOIA lawsuit on May 6, 2015 for records related to three FOIA requests submitted to State Department between March 6, 2015 and March 9, 2015. Complaint ("Compl."). ECF No. 1. The requests sought the following:

1. Any and all records concerning, regarding, or relating to the use of a non-"state.gov" email address by former Secretary of State Hillary Rodham Clinton. Such records include, but are not limited to, records concerning security, classification, preservation, and compliance with the Federal Records Act and/or the Freedom of Information Act.

The timeframe for this request is January 20, 2009 to February 20, 2009.

2. Any and all communications between officials, officers, or employees of the Department of State and officials, officers, or employees of the White House and/or Executive Office of the President concerning, regarding, or relating to the use of non-"state.gov" email addresses by former Secretary of State Hillary Clinton.

The timeframe for this request is June 1, 2014 to the present.

3. Any and all records in the possession or under the control of the State Department related to expenses incurred in the creation, maintenance and/or use of the clintonemail.com email server domain, including but not limited to, expenses for hardware, software, registration fees, account maintenance fees, and security products and services.

Compl. ¶¶ 5, 8, 11.

In the July 10, 2015 Joint Status Report filed by the parties, Defendant agreed to make its first production of records on or before September 4, 2015 and provide the Court with a production schedule by September 18, 2015. ECF No. 7. The parties proposed, and the Court ordered, the following production schedule:

- October 30, 2015 – Defendant completes its search for potentially responsive records;
- November 6, 2015 – Defendant provides Plaintiff with the estimated volume of documents retrieved from its search efforts needing review and processing;
- November 13, 2015 – Defendant makes it second production of documents responsive to Plaintiff's FOIA request;

- November 23, 2015 – Parties file a joint status report with a schedule and completion date for production of documents responsive to Plaintiff's FOIA requests.

  *Id*; *see also* Court's October 28, 2015 Minute Order.

In the parties' November 23, 2015 Joint Status Report, Defendant informed the Court that State Department had completed its search for potentially responsive records which yielded approximately 16,900 pages of documents. ECF No. 11. On November 23, 2015, State Department produced one document in part responsive to Plaintiffs requests. *Id*. State Department proposed completion of the production of documents responsive to Plaintiff's request on or before January 20, 2016. *Id*.

State Department subsequently identified a source of potentially responsive documents that had not previously been identified or searched. Defendant's Motion to Stay Production Deadline. ECF No. 12. Defendant requested, and the Court granted, a stay of the production deadline to allow Defendant to process and review the newly identified records. *Id*. *See also* Court's January 21, 2016 Minute Order.

Defendant made a production of 2 documents on January 20, 2016. February 5, 2016 Joint Status Report. ECF No. 13. On March 4, 2016, Defendant notified Plaintiff that a search of the newly identified records yielded no documents responsive to Plaintiff's FOIA requests. March 21, 2016 Joint Status Report. ECF No. 14. Additionally, Defendant informed the Court that its search and process of records was complete. *Id*. Of the approximately 16,900 pages of documents identified by Defendant as potentially responsive to Plaintiff's FOIA requests, Defendant produced a total of 3 records, partially redacted, totaling 6 pages, and withheld one responsive record in full asserting FOIA Exemptions 6, 7(C), and 7(E). 5 U.S.C. § 552(b)(6), (b)(7)(C), and (b)(7)(E). On April 4, 2016, Defendant provided a draft *Vaughn* index. ECF No.

15. Plaintiff informed Defendant that it was challenging the adequacy of the search and production and the non-disclosure of the 16-page SSIB ROI of Bryan Pagliano in its entirety. ECF No. 15. Defendant filed a motion for summary judgement on June 17, 2016. ECF No. 17. Plaintiff filed an opposition and cross-motion for summary judgment on July 16, 2016. ECF No. 18.

Defendant informed Plaintiff that it had received additional potentially responsive records to Plaintiff's FOIA requests from the FBI. The parties agreed to stay the briefing schedule to give Defendant an opportunity to search the records received from the FBI for records responsive to Plaintiff's FOIA requests. ECF No. 19.

On October 14, 2016, Defendant produced two partially redacted documents. ECF 21. Plaintiff informed Defendant that, in addition to challenging the adequacy of the initial search and production, and the validity of withholding the Pagliano ROI in its entirety, Plaintiff challenged the adequacy of the supplemental search and validity of the partial withholding of information contained in one of the two newly produced documents – Doc. No. C06146990 ("Petreaus Email"). *See* Burke Decl., Exhibit 1. ECF No. 21. On October 31, 2016, the Court adopted the parties' joint proposal to deny the pending cross-motions as moot and order a new summary judgment briefing schedule. *Id.; see also* October 31, 2016 Minute Order.

## II. **BRYAN PAGLIANO**

In May 2009, Bryan Pagliano was hired as a "Schedule C" employee, a political appointee. Pl. SOF. ¶ 13, ("Pagliano Article"). Pagliano was on the very high end of State Department earners with a salary of around $140,000 per year. *Id*. Schedule C employees have a "confidential or policy-determining relationship to their supervisor and agency head," according to the Office of Personnel Management. *Id*. Although Pagliano's resume and

background do not reflect the exceptional skill that would warrant the highest earning grade on the government pay scale, he was hired at "grade" 15. *Id*. Pagliano previously worked as an IT director for former Secretary Clinton's 2008 presidential campaign. *Id*. Pagliano's political appointment as an IT specialist was unique and confusing to the State Department managers overseeing his potential and eventual employment. Pl. SOF. ¶ 11; Burke Decl., Exhibit 1.

## III. ARGUMENT

### 1. Legal Standard.

In FOIA litigation, as in all litigation, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requester. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

Also in FOIA litigation, but unlike in most other federal litigation, the agency defending the action, not the plaintiff, bears the burden of proof. 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action"); *accord Military Audit Project v. Casey*, 656 F.2d 724, 739 (D.C. Cir. 1981). "[T]he agency must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (*quoting Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

FOIA generally requires complete disclosure of requested agency information unless the information falls into one of FOIA's nine clearly delineated exemptions. 5 U.S.C. § 552(b); *see also Dep't of the Air Force v. Rose*, 425 US. 352, 360-61 (1976) (discussing the history and

purpose of FOIA and the structure of FOIA exemptions). In light of FOIA's goal of promoting agency disclosure, the exemptions are to be construed narrowly. *U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136, 150-151 (1989). "[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Department of State v. Ray*, 502 U.S. 164, 173 (1991).

Defendant fails to meet its burden of proof and cannot justify the withholding of responsive documents as validly exempt under FOIA and should be ordered to disclose the improperly withheld records.[1]

2. Defendant Has Improperly Withheld Records Pursuant to FOIA Exemptions

The Defendant has wrongly withheld the 16-page ROI for former State Department employee Bryan Pagliano, dated May 3, 2009, prepared by the Bureau of Diplomatic Security. Under ordinary circumstances, there might be little public interest in this type of security clearance investigation with the subject of a Single Scope Background Investigation ("SSBI"), and so the privacy interests of the individuals might prevail. However, given the widespread use of the clintonemail.com records system by Defendant and the complications it has created for FOIA compliance, the public interest in the setup, maintenance of the server single-handedly serviced by Mr. Pagliano generally is extremely high.

a. FOIA Exemptions 6 and 7(C)

FOIA Exemptions 6 and 7(C) protect against the unwarranted invasion of personal privacy. "[U]under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Multi AG Media LLC v. USDA*, 515 F.3d 1224, 1227 (D.C. Cir.

---

[1] Plaintiff challenged Defendant's supporting declaration as inadequate to meet its burden of proof regarding the sufficiency of the search in its initial motion for summary judgment. Defendant has submitted a new declaration in support of its search, which addresses the deficiencies of the initially submitted declaration. Plaintiff no longer challenges the sufficiency of Defendant's declaration. At this time, Plaintiff is not challenging the adequacy of Defendant's initial search for responsive records.

2008), *quoting Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). Indeed, FOIA's "presumption favoring disclosure . . . is at its zenith under Exemption 6." *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1057 (D.C. Cir. 2009). Under Exemption 6, FOIA's disclosure requirements do not apply to "personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). When Exemption 6 is claimed, the Court must assess whether the third party's privacy interest is outweighed by the public interest in the disclosure. *See Citizens for Responsibility and Ethics v. Dep't of Justice*, 840 F. Supp. 2d 226, 231 (D.D.C. 2012), *quoting ACLU v. Dep't of Justice*, 655 F.3d 1, 12 (D.C. Cir. 2011).

Before an agency can invoke any of the harms enumerated in FOIA Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7). While the Bureau of Diplomatic Security may be the "law enforcement arm" of State Department, it does not necessitate that any and all records retrieved from its system is a document that is compiled for law enforcement purposes. The "investigative" nature of Mr. Pagliano's ROI was not for law enforcement purposes, but rather for investigation and security check into a potential employee of State Department. It appears that Mr. Pagliano passed muster and held to such a high level of scrutiny and security that he alone was permitted to maintain and service the personal server and email accounts former Secretary Clinton's used during her tenure as Secretary of State. Stein states that an SSBI is meant "to determine whether the subject possesses sufficient reliability, trustworthiness, and ability to protect classified information and to hold a sensitive government position." Stein Decl. ¶ 85. Executive Order 10450 requires that every applicant for federal employment or retention in employment in the Federal service of the person being investigated is clearly consistent with the

interests of the national security." Stein Decl. ¶ 85. "While this intensely personal inquiry is required for the adjudication of eligibility for access to classified information, the privacy interest in the information is extremely significant." Stein Decl. ¶ 86

Exemption 7(C) shields from public disclosure information about individuals where: (1) the "information [was] compiled for law enforcement purposes," and; (2) the disclosure of the information could "reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In *Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989), the Supreme Court observed that the extent of the public interest in disclosure under FOIA is tied to how well the release of the information will "shed[] light on an agency's performance of its statutory duties."

It is the purpose of the record, not the role of the agency that is determinative. *Pratt*, 673 F.2d at 420-21.. Exemption 7(C) language is broader than that in Exemption 6 and tilts in favor of non-disclosure.. However, not all documents compiled by a law enforcement agency are compiled for law enforcement purposes. Whether documents are compiled for such is determined by a two part test: (1) the agency's investigative activities that gave rise to the documents must be related to the enforcement of federal laws; and (2) the nexus between the investigation and one of the agency's law enforcement duties must be based on sufficient information to support at least a colorable claim of its rationality. *Pratt*, 673 F.2d 408, 413, 218 U.S. App. D.C. 17 (D.C. Cir. 1982).

The Court has entitled deference to agencies that specialize in law enforcement. However, a "deferential" standard of review is not "vacuous." *Pratt*, 673 F.2d at 421. If the declarations "fail to supply facts" in sufficient detail to apply the Pratt rational nexus test, then a court may not grant summary judgment for the agency. *Quinon v. FBI*, 318 U.S. App. D.C. 228,

86 F.3d 1222, 1229 (D.C. Cir. 1996); *see also Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1056 (3d Cir. 1995). *Campbell v. United States DOJ*, 334 U.S. App. D.C. 20, 164 F.3d 20, 32 (1998).

Simply because an inquiry is titled "investigation" does not deem such actions/activity for law enforcement purposes. *See Banks v. Dep't of Justice*, 700 F. Supp. 2d 9, 18 (D.C.C. 2010) (denying summary judgment where the BOP "appear[ed] to rely solely on its status as a law enforcement agency as the premise from which the Courts should conclude that any record it maintains was compiled for law enforcement purposes").

Here, the SSBI ROI is a report memorializing a required, routine background check/investigation. The ROI is an administrative requirement for all high level employees. Pagliano was a "Schedule C" employee – a political appointment –, which accorded a "confidential or policy-determining relationship to their supervisor and agency head" Pl. SOF ¶ 13. An SSBI is performed as an administrative duty for ensuring employees can be trusted with access to confidential information. Defendant's declaration fails to establish that the SSBI ROI is of the investigative nature for law enforcement purposes.

Although Stein's declaration may establish that the DS is the law enforcement arm of State Department with a general law enforcement purpose, it does not additionally show a "rational nexus" between its law enforcement purpose and the ROI at issue. *See Schoenman v. FBI*, 575 F. Supp. 2d 136, 158 (D.D.C. 2008); *See Campbell*, 164 F.3d at 32; *Pratt*, 673 F.2d at 421. The D.C. Circuit rejected a similar argument in Campbell, finding that DOJ's "position reduces to the long-rejected claim that anything in an FBI file pertains to an exempt law enforcement purpose." 164 F.3d at 32 (citing Pratt, 673 F.2d at 415). *Schoenman* v. FBI, 575 F. Supp. 2d 136, 158 (D.D.C. 2008).

i. Defendant Fails to Show it Engaged in Adequate Public and Private Balancing Analysis

Plaintiff does not seek the personally identifiable information of Mr. Pagliano or related 3rd party individuals. There is, however, a great public interest in the substantive information related to Mr. Pagliano's background review. Disclosure of such information contained in the ROI certainly serves the "core purpose" for which Congress enacted the FOIA, i.e. to show "what the government is up to." U.*S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 750 (1989). This may shed further light on the truth of the Clinton email arrangement (which has only come out in dribs and drabs over the past year), and offer some insight into the server and email accounts maintained and serviced solely by Mr. Pagliano. Accordingly, the public interest outweighs any privacy interests in these email addresses.

Stein's declaration does not adequately describe State Department's analysis of the public interest balance effort made by State Department in its determination to withhold the records and information. An agency may not withhold records under exemption 7(C) solely because disclosure would infringe legitimate privacy interests, but must balance privacy interests against the public's interest in learning about the operations of its government. *See United States Dep't of Defense v. Federal Labor Relations Auth*., 510 U.S. 487, 495, 127 L. Ed. 2d 325, 114 S. Ct. 1006 (1994); *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762, 103 L. Ed. 2d 774, 109 S. Ct. 1468 (1989). Ca*mpbell v. United States DOJ*, 334 U.S. App. D.C. 20, 164 F.3d 20, 33 (1998)

As the Supreme Court stated in Reporters Committee, the public interest to be taken into the balance is that in "official information that sheds light on an agency's performance of its

statutory duties." 489 U.S. at 773. Disclosure of information that "reveals little or nothing about an agency's own conduct" does not further the public interest envisaged by FOIA. *Id*. We have recently observed, however, that although Reporters Committee and the precedent of this circuit make clear that FOIA extends only to those records, which reveal something about agency action, the mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption. Such records may still be cloaked with the public interest if the information would shed light on agency action. *Nation Magazine, Washington Bureau v. United States Customs Servic*e, 71 F.3d 885, 894-95 (D.C. Cir. 1995) (emphasis in original).

"[T]he public interest in whether public servants carry out their duties in an efficient and law-abiding manner" outweighs the alleged privacy interest in the withheld email addresses. *Chang v. Department of the Navy*, 314 F.Supp.2d 35, 44 (D.D.C. 2004). In light of the foregoing, the State Department's argument that the ROI of Mr. Pagliano is of little public interest is incorrect.

The public interest in knowing more about the individual State Department employee that was held with such trust and competence that he alone maintained and serviced the private email server system is enormous.

Stein merely states "While the public may have a minor interest in understanding the type of background that is deemed suitable for sensitive positions in general, the significant privacy interests of Mr. Pagliano and the third party individuals discussed in the ROI…clearly outweigh the public interest…" Stein Decl. ¶ 87. Stein states State Department examined each item of information to determine the privacy interest of all individuals named and balanced it against the public interest in State's operations and activities. "In each interest I found that the privacy interest clearly outweighed any public interest in disclosure." Stein Decl. ¶ 89

Accordingly, Defendant has failed to satisfy its statutory burden to justify it's withholding of the ROI.

b. FOIA Exemption 7(E)

Non-disclosure under Exemption 7(E) requires there must be a reasonably expected risk of circumvention of the law. "[A]n affidavit that contains merely a categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *Campbell v. U.S. Dep't of Justice,* 164 F.3d at 30 (citation and internal quotation marks omitted). *Clemente v. FB*I, 741 F. Supp. 2d 64, 83 (D.D.C. 2010). Stein's declaration however provides the Court with no means by which it can determine whether the information withheld relates to techniques whose disclosure could result in evasion of the law.

Here, Stein's declaration is broad and non-descriptive stating the ROI "contains techniques and procedures for verifying information and cooperating with other agencies." The declaration does not meet the standard for a rational belief there is risk of circumvention of the law.

c. Exemption 5 does not apply to email chain.

Exemption 5 of FOIA allows an agency to withhold records or information that is "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552 (b)(5). Courts have recognized the deliberative process privilege and the attorney work product doctrine as Exemption 5 withholdings. *See Wright v. DOJ, 121 F. Supp. 3d* 171, 184 (D.D.C. 2015). Defendant invokes both the deliberative process privilege and the attorney work product doctrine over the entire 96 pages of a record aptly identified as the "Declination Memorandum".

Defendant makes no attempt to identify or segregate any factual or non-exempt portions of the document.

1. Defendant Improperly Applies the Deliberative Process Privilege

The burden is on Defendant to show that the record at issue should be withheld in whole or in part pursuant to the deliberative process privilege. *Wilderness Society v. United States Department of the Interior*, 344 F. Supp. 2d 1, 9 (D.D.C. 2004). To overcome its burden, Defendant must show that the records are both pre-decisional and deliberative. *Id.* at 10.

In order to withhold information pursuant to the deliberative process privilege, an agency must demonstrate that the information would "reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (*quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). Further, the information must be "pre-decisional and it must be deliberative[,]" and the agency should "not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual." *Id*. (citations omitted).

To be part of the deliberative process, the document must be part of the decision-making process, or, as the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has described, "[must] reflect[] the give-and-take of the consultative process." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "[T]he agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Id.* at 868. "If documents are not a part of a clear 'process' leading to a final decision on the issue . . . they are less likely to be properly

characterized as pre-decisional; in such a case there is an additional burden on the agency to substantiate its claim of privilege." *Id*.

Here, the challenged record – consisting of a few personal messages between friends - has absolutely no deliberative process privilege implications. Defendant cannot justify withholding portions of the record pursuant to Exemption 5.

The original message from Hillary Clinton to "Dave" Petraeus is properly characterized as a cordial thank you note and providing an intimate friend with her private email address. "Dave" responds to the informal note of thanks with an inquiry about the status of a personal request that had been made to which the former Secretary of State informs Petreaus "I requested he be kept. It was done." The friendly correspondence continues, but is being withheld by State Department as an "interagency memorandum" asserting the deliberative process privilege.

Exemption 5 protects documents that include recommendations and deliberations by which government decisions are formulated. Here, the communication is not a give and take. The correspondence does not comprise of the authors opinions and recommendations as suggested in Defendant's brief. Rather, it is an inquiry between friends regarding a personal favor. Any personal opinion included in the exchange has no reasonable expectation of effect or influence on future "exchange of ideas, recommendations, and opinions" between or among government officers when developing a strategy for official action.

The email chain indicates no discussion about strategy, policy or government action. The exchange is not even between government officials communicating in their official capacities. Rather, it is a cordial correspondence of personal inquiry between friends. There can be no reasonable expectation to have a chilling effect on policy deliberations or official government action from such similar communications in the future. Exempting the record from disclosure in

its entirety is outside the purpose and spirit of FOIA. Defendant mischaracterizes the entire record to fit the breadth of Exemption 5 – meant to protect inter-agency communications and pre-decisional deliberations on diplomatic strategy.

d. Exemption 6 does not apply.

Plaintiff has no objection to withholding personal email addresses and contact information exempt for privacy considerations. However, identification of any third party discussed as subject of a personal favor between high-ranking friends in the email exchange at issue does not constitute an unwarranted invasion of privacy for purposes of FOIA.

**3. Defendant Failed to Produce Reasonably Segregable Information**

The segregability analysis required by FOIA cannot be understated. In *Mead Data Central v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), the Court held that "even where specific exemptions apply, the agency is required to conduct a segregability analysis and determine if any non-exempt portions of the record can be released." This requirement is so essential that, "before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld … [and] [i]f the district court approves withholding without such a finding, remand is required even if the requester did not raise the issue of segregability before the court." *Sussman*, 494 F.3d at 1116 (internal citations omitted).

There certainly are facts that could be released without invading on Mr. Pagliano's privacy. The Court has "the option to conduct *in camera* review." *Juarez v. Department of Justice*, 518 F.3d 54, 59-60 (D.C. Cir. 2008); *Allen v. Central Intelligence Agency*, 636 F.2d 1287, 1298 (D.C. Cir. 1980) ("Where the agency fails to meet that burden, a not uncommon event, the court may employ a host of procedures that will provide it with sufficient information

to make its *de novo* determination, including *in camera* inspection."). In addition, the D.C. Circuit has held, "[*I*]*n camera* review may be particularly appropriate when ... the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims." *Quinon v. Federal Bureau of Investigation*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). Because Defendant has insufficiently provided enough detail to permit a proper analysis of its claims of withholding, *in camera* review of the time records is appropriate in this case. Accordingly, withholding these facts is unlawful and the Defendant must release the information.

**Conclusion**

Plaintiff's motion should be granted, and Defendant's motion should be denied.

Dated: January 28, 2017

Respectfully submitted,

*/s/ Lauren M. Burke*
Lauren M. Burke
DC Bar No. 472919
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
(202) 646-5172

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| *Plaintiff,* | ) | |
| | ) | Civ. No. 1:15-cv-00689 (RDM) |
| v. | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel and pursuant to Local Civil Rule 7.1(h), respectfully submits this response to Defendants' Statement of Material Facts Not in Dispute and Plaintiff's Statement of Material Facts in Support of Cross-Motion for Summary Judgment:

**I. Plaintiff's Response to Defendants' Statement of Material Facts Not in Dispute.**

1. Not disputed.

2. Not disputed.

3. Not disputed.

4. Not disputed

5. Not disputed.

6. Plaintiff lacks sufficient knowledge to confirm or deny Defendant's actions as described in this paragraph. *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" between a FOIA requester and an agency in FOIA cases).

7. Not disputed.

8. Not disputed.

9. Not disputed.

10. Plaintiff lacks sufficient knowledge to confirm or deny Defendant's actions as described in this paragraph. *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" between a FOIA requester and an agency in FOIA cases).

11. Not disputed.

## II. Plaintiff's Statement of Material Facts Not in Dispute in Support of Cross-Motion for Summary Judgment.

1. In a July 10, 2015 Joint Status Report filed by the parties, Defendant agreed to make its first production of records on or before September 4, 2015 and provide the Court with a production schedule by September 18, 2015. July 10, 2015 Joint Status Report, ECF No. 7.

2. The parties proposed, and the Court ordered, the following production schedule:

- October 30, 2015 – Defendant compeltes its search for potentially responsive records;
- November 6, 2015 – Defendant provides Plaintiff with the estimated volume of documents retrieved from its search efforts needing review and processing;
- November 13, 2015 – Defendant makes it second production of documents responsive to Plaintiff's FOIA request;
- November 23, 2015 – Parties file a joint status report with a schedule and completion date for production of documents responsive to Plaintiff's FOIA requests.

July 10, 2015 Joint Status Report, ECF No. 7; October 28, 2015 2015 Minute Order.

3. In the parties' November 23, 2015 Joint Status Report, Defendant informed the Court that State Department had completed its search for potentially responsive records which yielded approximately 16,900 pages of documents. November 23, 2015 Joint Status Report,

ECF No. 11.

4. On November 23, 2015, State Department produced one document in part responsive to Plaintiffs requests. November 23, 2015 Joint Status Report, ECF No. 11.

5. State Department proposed completion of the production of documents responsive to Plaintiff's request on or before January 20, 2016. November 23, 2015 Joint Status Report, ECF No. 11.

6. State Department subsequently identified a source of potentially responsive documents that had not previously been identified or searched. Defendant's Motion to Stay Production Deadline, ECF No. 12.

7. Defendant requested, and the Court granted, a stay of the production deadline to allow Defendant to process and review the newly identified records. Defendant's Motion to Stay Production Deadline, ECF No. 12; Court's January 21, 2016 Minute Order.

8. Defendant made a production of 2 documents on January 20, 2016. February 5, 2016 Joint Status Report, ECF No. 13.

9. On March 4, 2016, Defendant notified Plaintiff that a search of the newly identified records yielded no documents responsive to Plaintiff's FOIA requests. March 21, 2016 Joint Status Report, ECF No. 14.

10. Defendant informed the Court that its search and process of records was complete in the March 21, 2016 Joint Status Report. March 21, 2016 Joint Status Report, ECF No. 14.

11. On October 14, 2016, Defendant released two documents, partially redacted, retrieved from the materials provided to it by the FBI. ECF No. 21. Plaintiff informed Defendant it would challenge the partial redaction of Doc. No. C06146990 ("Petreaus email). *Id*. *See* Lauren M. Burke Declaration ("Burke Decl."), Exhibit 1.

12. Plaintiff Judicial Watch received two documents which comprised of a related chain of email correspondences among State Department personnel relating to the potential employment of Bryan Pagliano, Document No. C05981359 and Document No. C05981354. The emails were produced to Plaintiff as part of a production of documents in response to a FOIA request in the lawsuit captioned *Judicial Watch v. Department of State* (Case No. 15-1441) (D.D.C.) (JEB)). *See* Burke Decl., Exhibit 2. A copy of Document No. C05981359 was published on the U.S. State Department's government website and is available at https://foia.state.gov/searchapp/DOCUMENTS/KennedyMills_Litigation1/C05981359.pdf. A copy of Document No. C05981354 was published on the U.S. State Department's government website and is available at https://foia.state.gov/searchapp/DOCUMENTS/KennedyMills_Litigation1/C05981354.pdf.

13. On July 24, 2016, the *Daily Beast* published an article profiling Bryan Pagliano, former State Department employee and IT specialist to former Secretary Hillary Clinton. *See* Shane Harris, *The Missing Man at the Center of Hillary Clinton's Email Scandal,* The Daily Beast, July 24, 2016.[1] ("Pagliano article"). A copy of the article is available on the Daily Beast website at http://www.thedailybeast.com/articles/2016/07/24/the-missing-man-at-the-center-of-hillary-clinton-s-email-scandal.html.

Dated: January 27, 2017 Respectfully submitted,

1 Plaintiff respectfully requests that the Court take judicial notice of the publication of the article, which was published by the DAILY BEAST, and published on the website provided above. As a result, the comments "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

*/s/ Lauren M. Burke*
Lauren M. Burke
DC Bar No. 1028811
**JUDICIAL WATCH, INC.**
425 Third Street S.W., Suite 800
Washington, DC 20024
(202) 646-5172

*Counsel for Plaintiff*