**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JUDICIAL WATCH INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civ. No. 1:15-cv-00689 (RDM) |
| U.S. DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY AND OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

I.  STATE PROPERLY WITHHELD THE PAGLIANO ROI PURSUANT TO FOIA EXEMPTIONS. ............................................................................................................. 3

   A.  Diplomatic Security Compiled the Pagliano ROI for Law Enforcement Purposes ..... 3

   B.  State Properly Withheld the Pagliano ROI Under Exemptions 6 and 7(C) ................ 4

   C.  State Properly Withheld the Pagliano ROI Under Exemption 7(E) ............................ 6

II. STATE PROPERLY WITHHELD PORTIONS OF THE EMAIL EXCHANGE BETWEEN SECRETARY CLINTON AND GENERAL PETRAEUS PURSUANT TO FOIA EXEMPTIONS. ........................................................................................................ 7

   A.  State Properly Withheld Part of the Email Chain Pursuant to Exemption 5 ............... 7

   B.  State Properly Withheld Part of the Email Chain Under Exemption 6 ...................... 9

III. STATE PRODUCED ALL REASONABLY SEGREGABLE INFORMATION. ............. 10

CONCLUSION ....................................................................................................................... 12

**TABLE OF AUTHORITIES**

**CASES**

*Beck v. DOJ*,
  997 F.2d 1489 (D.C. Cir. 1993) .................................................................................................. 4

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) ................................................................................................. 3, 6

*DOJ v. Tax Analysts*,
  492 U.S. 136 (1989) .................................................................................................................. 9

*Erwin v. United States Dep't of State*,
  2013 WL 6452758 (N.D. Ill. Dec. 9, 2013) ............................................................................... 4

*Henderson v. Office of the Dir. of Nat'l Intelligence*,
  151 F. Supp. 3d 170 (D.D.C. 2016) ........................................................................................... 7

*Horowitz v. Peace Corps*,
  428 F.3d 271 (D.C. Cir. 2005) ................................................................................................. 10

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ................................................................................................... 7

*Johnson v. Exec. Office for U.S. Attorneys*,
  310 F.3d 771 (D.C. Cir. 2002) ................................................................................................. 11

*Judicial Watch, Inc. v. United States Dep't of State*,
  2017 WL 680371 (D.D.C. Feb. 21, 2017) ................................................................................. 5

*Loving v. DOD*,
  550 F.3d 32 (D.C. Cir. 2008) ................................................................................................... 11

*Mays v. DEA*,
  234 F.3d 1324 (D.C. Cir. 2000) ............................................................................................... 10

*Mittleman v. Office of Pers. Mgmt.*,
  76 F.3d 1240 (D.C. Cir. 1996) ........................................................................................... 2, 3, 4

*Morley v. CIA*,
  508 F.3d 1108 (D.C. Cir. 2007) ........................................................................................... 2, 4, 6

*Muttitt v. Dep't of State*,
  926 F. Supp. 2d 284 (D.D.C. 2013) ...................................................................................10

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ............................................................................................................5

*Nat'l Ass'n. of Retired Fed. Employees v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989) ............................................................................................9

*Roth v. DOJ*,
  642 F.3d 1161 (D.C. Cir. 2011) ..........................................................................................4

*Sellers v. DOJ*,
  684 F. Supp. 2d 149 (D.D.C. 2010) ....................................................................................5

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991 ...........................................................................................5

*Soto v. U.S. Dep't of State*,
  118 F. Supp. 3d 355 (D.D.C. 2015) ..................................................................................11

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ........................................................................................10

**STATUTES**

10 U.S.C. § 162 ............................................................................................................................8
10 U.S.C. § 164 ............................................................................................................................8

**INTRODUCTION**

In its Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Plaintiff's Motion" and "Pl.'s Mot."), ECF No. 26, Plaintiff, Judicial Watch, claims that Defendant, United States Department of State ("State" or the "Department"), improperly withheld two documents: (1) a 16-page Report of Investigation ("ROI") prepared by the Department's Bureau of Diplomatic Security ("DS") for a Single Scope Background Investigation ("SSBI") of former State Department employee Bryan Pagliano ("Pagliano ROI"), withheld in full pursuant to FOIA Exemptions 6, 7(C), and 7(E); and (2) a 2-page email exchange between General David Petraeus, USA, Ret., and former Secretary of State Hillary Clinton, withheld in part pursuant to FOIA Exemptions 5 and 6.[1]

Plaintiff argues that the Pagliano ROI was improperly withheld because a State Department security clearance investigation does not meet the threshold requirements of FOIA Exemption 7, the public interest in release of the ROI outweighs Mr. Pagliano's personal privacy interests, and State's declaration does not provide sufficient detail to support its withholding under Exemption 7(E). Plaintiff's arguments are without merit.

---

[1] Plaintiff no longer opposes Defendant's Motion for Summary Judgment ("Defendant's Motion" and "Def.'s Mot."), ECF 22, as to the adequacy of the search conducted in response to its three FOIA requests. Plaintiff states that in light of Defendant's submission of a new declaration which addresses the alleged deficiencies in its prior declaration, "Plaintiff no longer challenges the sufficiency of Defendant's declaration…[and] Plaintiff is not challenging the adequacy of Defendant's initial search for responsive records." Pl.'s Mot. 6 n.1. Further, Plaintiff's Motion does not challenge Defendant's declaration and Motion for Summary Judgment as to the adequacy of its supplemental searches. Although Plaintiff's nonopposition to Defendant's Motion as to the initial searches or the supplemental searches does not in itself concede the issue, *Grimes v. District of Columbia*, 794 F.3d 83, 97-99 (D.C. Cir. 2015), State's declaration more than meets its burden to demonstrate that all searches were reasonable and adequate, and therefore summary judgment should be entered in its favor on this basis. *See* Stein Decl. ¶ 20-65; Def.'s Mot. 5-9. As such, this brief will only address Plaintiff's arguments as to the withholdings in the Pagliano ROI and the email exchange between Secretary Clinton and General Petraeus.

A virtually identical threshold argument challenging a security clearance investigation conducted by the Office of Personnel Management was rejected by the D.C. Circuit in *Mittleman v. Office of Pers. Mgmt.,* 76 F.3d 1240, 1243 (D.C. Cir. 1996) (per curiam). The public interest in Mr. Pagliano's personal information was minimal to begin with, has only lessened in recent months, and is clearly outweighed by the release of information pertaining to the "most intimate aspects of [his] life[.]" ECF No. 22-2, Stein Decl. ¶ 91. And State's declaration more than meets its burden to demonstrate that release of the Pagliano ROI risks circumvention of the law, particularly in light of the D.C. Circuit's decision in *Morley v. C.I.A,* 508 F.3d 1108 (D.C. Cir. 2007), finding that this conclusion is "self-evident" when it pertains to a security clearance investigation. *Id.* at 1129.

Plaintiff's arguments pertaining to the email exchange between Secretary Clinton and General Petraeus fair no better. Here, Plaintiff argues that the communication is a private email exchange among friends and thus the deliberative process privilege does not apply. At the same time, Plaintiff argues that the public interest in the names referenced in the "private email" outweighs the personal privacy interest in restricting the release of those names.

Plaintiff's argument disregards the context of the email discussion, the respective positions of the participants at the time of the exchange—the nominee for and then incumbent United States Secretary of State and the Commander of United States Central Command, and the reasons for withholding articulated in State's declaration. Moreover, release of the names of individuals recommended for appointment within the Department is of no public interest and would constitute a clear invasion of personal privacy.

Further, the Stein Declaration adequately explains how State conducted a line-by-line review of each document and released all segregable non-exempt material. Thus, *in camera* review is unnecessary. For these reasons, further described *infra*, summary judgment in favor of Defendant is appropriate.

# ARGUMENT

## I. STATE PROPERLY WITHHELD THE PAGLIANO ROI PURSUANT TO FOIA EXEMPTIONS

### A. Diplomatic Security Compiled the Pagliano ROI for Law Enforcement Purposes

Plaintiff begins its challenge to State's withholding of the Pagliano ROI by claiming that State failed to meet the threshold requirement of Exemption 7. While Plaintiff concedes that DS is the law enforcement arm of State, it questions State's assertion that the Pagliano ROI was compiled for law enforcement purposes. Pl.'s Mot. 7 ("While the Bureau of Diplomatic Security may be the 'law enforcement arm' of State Department, it does not necessitate that any and all records retrieved from its system is a document that is compiled for law enforcement purposes.").

"To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (citations omitted). State's declaration establishes that nexus. It describes which entity conducted Bryan Pagliano's Single Scope Background Investigation ("SSBI")—DS, the law enforcement arm of the Department; the purpose of that investigation—to determine if Mr. Pagliano should be granted access to classified information; how an SSBI is conducted—agents interview past employers, coworkers, family, and other individuals associated with the subject of the SSBI to determine whether the subject possesses sufficient reliability, trustworthiness, and ability to protect classified information and to hold a sensitive government position; and that the Pagliano ROI was compiled as the official record of that investigation. *See* Stein Decl. ¶¶ 76-77, 84-86.

Further, Plaintiff's argument that a security clearance investigation is an administrative personnel matter and thus not conducted for law enforcement purposes has previously been rejected by this Circuit. *See Mittleman*, 76 F.3d at 1243 (holding background investigation conducted

3

by the Office of Personnel Management fell within the scope of Exemption 7); *see also Morley*, 508 F.3d at 1128-29 ("Background investigations conducted to assess an applicant's qualification, such as . . . clearance and investigatory processes, inherently relate to law enforcement.") (pertaining to background investigation conducted by the CIA).  Plaintiff also argues that Exemption 7 does not apply because "Mr. Pagliano passed muster and [was] held to such a high level of scrutiny…that he alone was permitted to maintain and service the personal server…."  Pl.'s Mot. 7.  *Mittleman* rejected this argument as well.  76 F.3d at 1243 ("It is immaterial to those objectives that OPM did not discover any information suggesting that Mittleman actually violated the law.").

Moreover, the District Court for the Northern District of Illinois, relying on *Mittleman*, specifically extended this analysis to background investigations conducted by State's Bureau of Diplomatic Security.  *Erwin v. United States Dep't of State*, 2013 WL 6452758, at *5-6, 2013 U.S. Dist. LEXIS 172597, at *20-22 (N.D. Ill. Dec. 9, 2013).  Plaintiff makes no attempt to distinguish these cases, all cited in Defendant's Motion, from the present litigation and therefore, Plaintiff's threshold argument should be rejected.

### B.  State Properly Withheld the Pagliano ROI Under Exemptions 6 and 7(C)

Plaintiff also challenges State's application of Exemptions 6 and 7(C) to the Pagliano ROI, claiming that the public interest in Mr. Pagliano is so great that it outweighs his personal privacy interests.  *See, e.g.,* Pl.'s Mot. 6-7, 10.  Plaintiff's argument should be rejected because it has failed to show a significant public interest that would warrant an invasion of Mr. Pagliano's personal privacy.

When, as here, Exemptions 6 and 7(C) are applied together, and the entire record at issue was compiled for law enforcement purposes, the Court need only apply the 7(C) balancing test.  *Roth v. DOJ,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)").  The focus then, is on whether the agency properly withheld

4

information under the "somewhat broader" standard of Exemption 7(C). *Beck v. DOJ*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (citation omitted). And where privacy concerns are present, Exemption 7(C) requires the requester to establish a sufficient reason for the disclosure. To do so, the requester must show that the public interest sought to be advanced is a significant one and that the information is likely to advance that interest. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172-173 (2004). Such a showing requires "more than a bare suspicion" of official misconduct; "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174. "Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Id.* at 174-75.

Here, Plaintiff argues that "the widespread use of the clintonemail.com records system by Defendant and the complications it has created for FOIA compliance" provides that counterweight. Pl.'s Mot. 6. Plaintiff further asserts that the substantive information contained in the Pagliano ROI may contain insights into the "Clinton email arrangement[.]" *Id.* at 10. These assertions, devoid of any factual support, fall far short of the "compelling evidence that the agency is engaged in illegal activity" necessary to justify public release of the "most intimate aspects" of Mr. Pagliano's life. *Sellers v. DOJ*, 684 F. Supp. 2d 149, 158 (D.D.C. 2010) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991); Stein Decl. ¶ 91; *cf., Judicial Watch, Inc. v. United States Dep't of State*, 2017 WL 680371, at *3-4; 2017 U.S. Dist. LEXIS 23610, *7-8 (D.D.C. Feb. 21, 2017) (upholding State's use of the deliberative process privilege and rejecting a similar "government misconduct" argument applied to Secretary Clinton's use of a private email server).

Contrary to Plaintiff's suggestion that the public only has "dribs and drabs" of information about former Secretary Clinton's use of a private email server, Pl.'s Mot. 10, there is in fact a wealth

5

of information in the public domain on this subject. There have been three separate inquiries into the matter, two with published reports, as well as civil discovery conducted by this same Plaintiff in another FOIA case. State IG investigation[2]; FBI investigation[3]; Letter from House Committee on Oversight and Government Reform dated January 17, 2017[4] (requesting information in furtherance of their investigation); Mem. and Order, ECF No. 73 (filed in *Judicial Watch v. State*, No. 13-1363 (D.D.C. 2016)). Any additional information to be gained by the public release of the Pagliano ROI at this point would be of minimal public interest and is clearly outweighed by Mr. Pagliano's privacy interests and therefore Exemptions 6 and 7(C) were properly applied.

### C. State Properly Withheld the Pagliano ROI Under Exemption 7(E)

Plaintiff claims that State's declaration "provides the Court with no means by which it can determine whether the information withheld relates to techniques whose disclosure could result in evasion of the law." Pl.'s Mot. 12. Plaintiff is mistaken.

State's declaration explains that the "ROI contains information demonstrating specific techniques and procedures used by DS personnel while conducting background investigations, including methods for verifying information and cooperation with other law enforcement bodies[]" and that "[d]isclosure of this information could risk undermining the effectiveness of such procedures and could result in future applicants utilizing such information to evade rigorous security checks." Stein Decl. ¶ 90. As such, State's declaration more than adequately meets the "relatively low bar for the agency to justify withholding" under Exemption 7(E). *Blackwell*, 646 F.3d at 42.

---

[2] *See* https://oig.state.gov/system/files/esp-16-03.pdf (last visited Mar. 3, 2017)

[3] *See* https://www.fbi.gov/news/pressrel/press-releases/statement-by-fbi-director-james-b-comey-on-the-investigation-of-secretary-hillary-clinton2019s-use-of-a-personal-e-mail-system (last visited Mar 3, 2017)

[4] https://oversight.house.gov/wp-content/uploads/2017/01/2017-01-17-JEC-EEC-to-Horowitz-DOJ-OIG-Email-Investigation.pdf (last visited Mar. 3, 2017)

Moreover, Plaintiff's Motion does nothing to address the D.C Circuit precedent "unequivocally stat[ing] that '[i]t is self-evident that information revealing security clearance procedures could render those procedures vulnerable and weaken their effectiveness at uncovering background information on potential candidates[.]'" *Henderson v. Office of the Dir. of Nat'l Intelligence*, 151 F. Supp. 3d 170, 178 (D.D.C. 2016) (quoting *Morley*, 508 F.3d at 1129). Therefore, this Court should find that State properly invoked Exemption 7(E) to withhold the Pagliano ROI.

> II. **STATE PROPERLY WITHHELD PORTIONS OF THE EMAIL EXCHANGE BETWEEN SECRETARY CLINTON AND GENERAL PETRAEUS PURSUANT TO FOIA EXEMPTIONS**

**A. State Properly Withheld Part of the Email Chain Pursuant to Exemption 5**

Plaintiff also challenges the partial withholding of a two-page January 10-28, 2009 email exchange between Hillary Clinton—who was the nominee for Secretary of State and then confirmed as Secretary of State[5] during the relevant period—and General David Petraeus, pursuant to Exemptions 5 and 6. Regarding Exemption 5, Plaintiff claims that this email has "absolutely no deliberative process privilege implications" because it is "a few personal messages between friends[.]" Pl.'s Mot. 14. In making this assertion, Plaintiff focuses on select, released portions of the email and ignores the description of the withheld information in State's declaration, as well as the reasons cited for State's application of Exemption 5.[6]

---

[5] Hillary Clinton was confirmed as the 67th United State Secretary of State on January 21, 2009.

[6] Plaintiff appears to copy an argument from a brief in a different case involving a 96-page Declination Memorandum denied in full under attorney client privilege as well as deliberative process privilege. *Compare* Pl.'s Mot. 12-14 *with* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 6-7, ECF No. 19 (filed in *WorldNetDaily.com Inc. v. DOJ*, No. 15-0549 (D.D.C. 2015)). The document at issue in the present case was released in part, is only two pages long, and has redactions for deliberative process privilege and personal privacy information, not attorney work product doctrine.

7

State's declaration more than adequately explains how the deliberative process privilege applies to this email. In its declaration, State explained that the email exchange was "regarding potential personnel appointments in the Department and suggested actions to be taken toward a particular foreign head of state." Stein Decl. ¶ 82. The declaration further explained that the email contained the author's personal opinions and recommendations as to these personnel appointments and future diplomatic engagements. *Id.* The released portion of the email chain further demonstrates that the redacted portion contains interagency deliberations regarding these topics. *See* Burke Decl. filed in Supp. Pl.'s Mot. at Ex. 1, ECF No. 26-1 (Released portion of email chain, containing the phrases "Thx again for keeping" and "Strongly recommend that"). The "ultimate purpose" of the deliberative process privilege is to "allow government officials freedom to debate alternative approaches in private." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). Because disclosure of these opinions and recommendations would inhibit candid internal discussions on diplomatic strategy and personnel recommendations in the future, Exemption 5 was properly applied.

Moreover, Plaintiff's argument completely disregards the respective positions of the participants of the email exchange at the time it occurred—the nominee and then incumbent U.S. Secretary of State and the Commander of U.S. Central Command—and the context of their discussion. U.S. Central Command is one of six geographic unified combatant commands under the Department of Defense. These commands are established to provide effective command and control of U.S. military forces in a geographic area. 10 U.S.C. § 162 (a)(4). Each unified command is led by a Combatant Commander who is a four-star general or admiral. 10 U.S.C. § 164. A Combatant Commander exercises operational command over the military forces in his or her geographic area and reports directly to the Secretary of Defense or the President. 10 U.S.C. § 164 (b)(1). General David Petraeus was assigned as Commander of U.S. Central Command from

8

October 31, 2008[7] until July 4, 2010[8] when he assumed command of the NATO International Security Assistance Force ("ISAF") and U.S. Forces Afghanistan ("USFOR-A"). Given the significance of the two government positions, the fact that General Petraeus refers to Secretary Clinton as "Madame Secretary" in the email, and the fact that the email exchange involves suggested diplomatic strategy towards a foreign head of state, the email cannot rightly be described as merely "a cordial thank you note" between "intimate friend[s]" with no interagency significance.[9] Pl.'s Mot. 14; Burke Decl., Ex.1. Therefore, State properly applied Exemption 5 to discussions between top officials about potential appointment and foreign policy decisions.

### B. State Properly Withheld Part of the Email Chain Under Exemption 6

Plaintiff has indicated that they do not challenge the withholding of personal email addresses and contact information in the email exchange between Secretary Clinton and General Petraeus under Exemption 6, but they do seek the release of "any third party discussed as [the] subject of a personal favor between high-ranking friends[.]" Pl.'s Mot. 15.

State's declaration explained that "the identities and personal details of persons suggested for appointments in the Department [were withheld] under FOIA Exemption 6, because release of this information could subject them to unwanted attention and harassing inquiries, interests that outweigh any minimal public interest in revealing this information." Stein Decl. ¶ 83. Thus, State

---

[7] http://www.centcom.mil/MEDIA/PRESS-RELEASES/Press-Release-View/Article/903524/gen-david-petraeus-assumes-command-of-centcom/ (last visited Mar. 3, 2017).

[8] http://www.centcom.mil/ABOUT-US/LEADERSHIP/Bio-Article-View/Article/904777/david-howell-petraeus/ (last visited Mar. 3, 2017).

[9] Further, if the note was merely personal correspondence between intimate friends as Plaintiff contends, it would not qualify as an agency record and would not be subject to the FOIA. *See U.S. DOJ v. Tax Analysts*, 492 U.S. 136, 140 (1989) (noting 5 U.S.C. § 552(a)(4)(B) "confers jurisdiction in the district courts when 'agency records' have been 'improperly withheld'").

9

has demonstrated a significant privacy interest in withholding the names of the potential personnel appointments. In contrast, Plaintiff provides no argument as to why the release of the names of personnel suggested for appointment under a different administration, more than eight years ago, would be of any public interest today. And when "there is no public interest in the disclosure of certain information, something, even a modest privacy interest, outweighs nothing every time." *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) (quoting *Nat'l Ass'n. of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)). Therefore, because the individuals mentioned in the email have a significant privacy interest in preventing their names and personal information from being disclosed to the public and there is no demonstrated public interest in the release of this information, Exemption 6 was properly applied.

### III. STATE PRODUCED ALL REASONABLY SEGREGABLE INFORMATION

Plaintiff claims that State insufficiently demonstrated that it has disclosed all reasonably segregable, nonexempt information and requests *in camera* review of the Pagliano ROI. Pl's Mot. 15-16. Plaintiff's request should be denied because State's declaration more than adequately meets its obligations under the FOIA.

An agency may withhold entire documents when the "exempt and nonexempt information are inextricably intertwined, such that the excision of exempt information would . . . produce an edited document with little informational value." *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (internal quotations omitted). Moreover, "'[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material,' which must be overcome by some 'quantum of evidence' by the requester." *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 310 (D.D.C. 2013) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117, (D.C. Cir. 2007)).

Here, State's declaration comprehensively describes each document withheld, as well as the exemption cited. The declaration further explains that State officials reviewed each of the

documents redacted or withheld on a line-by-line basis and concluded that there is no additional non-exempt information that may reasonably be segregated and released. *See* Stein Decl. ¶¶ 83, 91. After the line-by-line review some of the material was redacted in part and some of the material was withheld in full. But "[b]ecause the nature of an ROI for an SSBI is to inquire into the most intimate aspects of an individual's life to determine whether the government can trust them to handle its most sensitive information, the entire ROI involves privacy sensitive material" and thus it was withheld in full pursuant to Exemption 7(C). *Id.* ¶ 91. Further, State explained that "the entire ROI reflects investigative techniques; release of any portion of the document could reveal investigative decisions, including which areas of inquiry required additional attention or were relevant in a given case" so it was also withheld in full pursuant to Exemption 7(E). *Id.* In contrast, Plaintiff offers only the conclusory statement: "[t]here certainly are facts that could be released without invading on Mr. Pagliano's privacy." Pl.'s Mot. 15. This statement is far from the "quantum of evidence" required to overcome the presumption of good faith.

      Moreover, courts in this Circuit have routinely upheld an agency's segregability determination when the agency has submitted "a 'comprehensive *Vaughn* index, describing each document withheld, as well as the exemption under which it was withheld,' along with an affidavit in which an agency official 'explained that she personally conducted a line-by-line review of each document withheld in full and determined that 'no documents contained releasable information which could be reasonably segregated from the nonreleaseable portions'" *Soto v. U.S. Dep't of State*, 118 F. Supp. 3d 355, 370 (D.D.C. 2015) (quoting *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) and citing *Loving v. DOD*, 550 F.3d 32, 41 (D.C. Cir. 2008)). State has submitted a declaration that not only meets these requirements, it exceeds them. State's declaration not only describes how an agency official conducted a line-by-line review of each document, it explains that the very nature of the Pagliano ROI makes segregation impossible because Exemptions

11

7(C) and 7(E) apply throughout the document. Therefore, this Court should find that State met its segregation obligation without requiring *in camera* review.

## CONCLUSION

State conducted an adequate search for documents responsive to Plaintiff's requests, which Plaintiff no longer challenges. State also properly withheld information exempt from disclosure under Exemptions 5, 6, 7(C), and 7(E). Furthermore, all reasonably segregable information has been released to Plaintiff. For these reasons, State respectfully requests that summary judgment be entered in its favor and Plaintiff's Cross-Motion for Summary Judgment be denied.

Dated:  March 3, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ *Andrew E. Carmichael*
Andrew E. Carmichael
Trial Attorney
VA Bar No. 76578
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Rm.7218
Washington, D.C. 20530
Tel: (202) 514-3346
Fax: (202) 305 2685
Email: andrew.e.carmichael@usdoj.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civ. No. 1:15-cv-00689 (RDM) |
| ) | |
| U.S. DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |

# DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 7(h), Defendant, United States Department of State ("State") submits this response to Plaintiff's Statement of Material Facts Not in Dispute in Support of its Cross-Motion for Summary Judgment.

1. Not disputed.

2. Not disputed.

3. Not disputed.

4. Not disputed.

5. Not disputed.

6. Not disputed.

7. Not disputed.

8. Not disputed.

9. Not disputed.

10. Not disputed.

11. Not disputed.

12. Not disputed.

1

13. Not disputed.

Dated: March 3, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ *Andrew E. Carmichael*
Andrew E. Carmichael
Trial Attorney
VA Bar No. 76578
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Rm.7218
Washington, D.C. 20530
Tel: (202) 514-3346
Fax: (202) 305 2685
Email: andrew.e.carmichael@usdoj.gov

*Attorneys for Defendant*